IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LAURA WALKER,<br><br>       Plaintiff,<br><br>v.<br><br>VXI GLOBAL SOLUTIONS LLC,<br><br>       Defendant. | CIVIL ACTION NO.<br>1:19-cv-04846-MLB-RDC |

## NON-FINAL REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion to Compel Arbitration and Stay Proceedings. (Doc. 52). In this employment action, Plaintiff, proceeding *pro se*, asserts claims against her former employer, Defendant VXI Global Solutions LLC ("VXI"), under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112–12117. VXI seeks to compel arbitration of Plaintiff's claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. For the reasons stated below, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 52). [1]

---

[1] Although the parties do not address this issue, the Court must determine whether it may rule on Defendant's motion to compel arbitration by order or only recommend a ruling to the District Judge by way of a Report and Recommendation

## I. BACKGROUND

### A. Procedural History

Plaintiff initiated this action by filing a *pro se* complaint for employment discrimination against VXI and an application for leave to proceed *in forma pauperis* ("IFP"). (Doc. 2). After the Court granted Plaintiff IFP status, (Doc. 3), VXI filed an answer to the complaint, asserting its right to arbitration against Plaintiff's claims. (Doc. 9).

Soon after, VXI filed a motion to compel arbitration. (Doc. 13). In February 2020, the Court stayed proceedings pending a ruling on the motion to compel. (Doc. 19). However, after Plaintiff filed an initial response to the motion to compel, (Doc. 21), the parties submitted a barrage of filings to the Court, (*see* Docs. 25, 28,

---

("R&R"). *See generally* 28 U.S.C. § 636(b). Courts are split as to whether a motion to compel arbitration should be treated either as a case dispositive matter as to which a magistrate judge may only issue an R&R, or a matter within the statutory authority of a United States Magistrate Judge to resolve by order. *Compare Coxcom, Inc. v. Egghead Telecom*, No. 08-CV-698-TCK-PJC, 2009 WL 4016629, at *1 (N.D. Okla. Sept. 11, 2009) (R&R) (motion to compel arbitration must be resolved by an R&R to the trial judge); *Virgin Islands Water & Power Auth. v. Gen'l Elec. Int'l, Inc.*, Civil No. 2006-131, 2009 WL 1918238, at *2 (D.V.I. June 30, 2009) (holding that 28 U.S.C. § 636 "does not authorize a magistrate judge to rule on a motion to compel arbitration"), *with Schreiner v. Credit Advisors, Inc.*, No. 8:07CV78, 2007 WL 2904098, at *12 n.5 (D. Neb. Oct. 2, 2007) (holding that motion to compel arbitration is non-dispositive because parties must return to district court to have arbitration award confirmed, modified or vacated under 9 U.S.C. §§ 9–11, and the court retains jurisdiction even during arbitration). Given this split of authority and the fact that motions to compel arbitration are potentially the last act to occur in federal court, the undersigned's practice is to issue a report and recommendation.

30, 35, 36, 39, 40, 41, 42, 44, 45). On August 11, 2020, the Court entered an order denying VXI's motion to compel arbitration without prejudice. (Doc. 47). The Court granted Plaintiff the opportunity to conduct limited discovery on the arbitration issue, after which Defendant could file a new motion to compel arbitration. *Id.* The Court also provided the parties with a briefing schedule to consolidate their arguments. *Id.*

On September 21, 2020, VXI filed a renewed motion to compel arbitration. (Doc. 52). On October 13, 2020, Plaintiff filed a self-styled "Renewed Motion to Dismiss the Arbitration Agreement," which the Court construes as a brief in opposition to VXI's arbitration motion. (Doc. 54). VXI filed a reply on October 26, 2020. (Doc. 55). After reviewing the parties' arguments, the undersigned finds that this matter is ripe for review.[2]

---

[2] For the purpose of clarifying the record, the undersigned notes that an evidentiary hearing was originally scheduled, *sua sponte*. However, upon consideration of precedent governing arbitration disputes, the evidentiary hearing was cancelled so that the Court could apply the correct summary judgment standard, based only on the parties' filings. *See Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (abrogating *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851 (11th Cir. 1992) and *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814 (11th Cir. 1993)), which required a party opposing arbitration to deny unequivocally that an arbitration agreement existed and offer some evidence to substantiate that denial). If the Court determines that a genuine issue of material fact remains as to arbitration, the Court must proceed to trial to resolve the arbitration dispute. *See id.*

3

## B. Evidence

In support of arbitration, VXI asserts that the parties entered into a binding and enforceable arbitration agreement at the beginning of Plaintiff's employment. (Doc. 52–1 at 6–7). VXI attached a Mutual Agreement to Arbitrate Individual Claims (the "Arbitration Agreement") as Exhibit B to the motion to compel arbitration. (Doc. 52-2 at 11–12). VXI also provided the affidavits of Stanley Thomas, a senior human resources manager at VXI, and Kerrance Wright, a human resources coordinator at the time Plaintiff was hired. (Doc. 52-2 ("Thomas Aff.") at 1–7; Doc. 52-3 ("Wright Aff.")).

According to Thomas, VXI's personnel file for Plaintiff, which had been kept in the ordinary course of business, contained her new-hire paperwork from May 24, 2017, including the Arbitration Agreement. (Thomas Aff. ¶¶ 3–4). The Arbitration Agreement and other documents were provided to Plaintiff electronically, and to sign them, she was required to log in to the company's network with her employee identification number and a password. (*Id.* ¶ 14–15). She was required to scroll through the electronic document, click a button to proceed to a signature page, and place her signature digitally using a computer mouse. (*Id.* ¶ 16). During her employment, she continued to have access to the Employee Handbook, which contained the Arbitration Agreement's terms. (*Id.* ¶ 17). Thomas also states that, at

the time Plaintiff was hired, her last name was Leemore, rather than Walker. (*Id.* ¶ 12).

Wright attested that new-hire orientations were his primary responsibility when Plaintiff was hired. (Wright Aff. ¶ 2–3). Like Thomas, he stated that VXI's orientation involved using an employee identification number and password to complete new-hire paperwork, including the Arbitration Agreement. (*Id.* ¶ 3–6). Thomas's practice was to confirm that each employee signed all of the documents by checking each new employee's computer individually. (*Id.* ¶ 7).

The Arbitration Agreement appears in VXI's Employee Handbook as Appendix C. (Doc. 52-2 at 11–12). Paragraph 1 of the Arbitration Policy provides, in relevant part,

> The Company and I agree to resolve, by arbitration, all individual claims or controversies . . . involving the Company and any of its past or present partners, officers, employees or agents, whether or not those claims or controversies arise out of my employment with the Company or the termination of my employment[.] . . . [T]he Claims covered by this Agreement include, but are not limited to . . . claims for discrimination or harassment, including but not limited to discrimination or harassment based on race, sex religion, national origin, age, marital status, physical or mental disability, medical condition[,] or sexual orientation[.]

*Id.* The Arbitration Agreement also states in Paragraph 10, "The promises by the Company and by me to arbitrate claims, rather than to litigate them, provide consideration for each other." *Id.* The following page contained a paragraph stating the following:

5

> The Company and I acknowledge that we have both carefully read this Agreement, that all understandings between me and the Company relating to the subject matter of arbitration are contained in it, that our respective signatures on this Agreement mean that both the Company and I are giving up our rights to a jury trial and to a trial in a court of law, and that we have both entered into this Agreement voluntarily and not in reliance on any premises or representations other than those contained in this Agreement.

(Doc. 52-2 at 13). Below that paragraph is the signature of Laura Leemore, dated May 24, 2017. *Id.*

Opposing arbitration, Plaintiff argues that she never signed any arbitration agreement during her employment at VXI and that VXI has not presented enough evidence showing that she agreed to the Arbitration Agreement at issue here. (Doc. 54 at 7–8). Plaintiff provided her own affidavit, in which she denies signing the Arbitration Agreement or any type of agreement that waives her right to sue in court. (*Id.* at 38). Plaintiff also provided two affidavits from her son, Anthony Leemore, who claims that he participated in VXI's employee training in July 2017 but was not presented with any arbitration agreement. (*Id.* at 48–49). He also states that Wright was not present for any portion of his orientation. *Id.*

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides that a written agreement to settle controversies by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This provision 'reflect[s] both a liberal federal

policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract.'" *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir.2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Accordingly, courts apply a presumption in favor of arbitration, except in disputes concerning whether an agreement to arbitrate has been made. *Bazemore*, 827 F.3d at 1329.

When a party moves a district court to compel arbitration under the FAA, the court's first responsibility is to determine whether "the making of the agreement for arbitration or the failure to comply therewith is . . . in issue." 9 U.S.C. § 4; *see Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). The Court applies a "summary judgment-like standard" to determine whether the parties agreed to arbitrate a dispute. *Burch*, 861 F.3d at 1346 (citing *Bazemore*, 827 F.3d at 1333).

A district court must grant summary judgment to a moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Those materials may include "depositions, documents, electronically stored information, affidavits or

7

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.  The non-moving party must "go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Moreover, "'conclusory allegations without specific supporting facts have no probative value' for a party resisting summary judgment." *Bazemore*, 827 F.3d at 1333 (quoting *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000)).

The Court holds *pro se* pleadings to a less stringent standard than pleadings drafted by attorneys, and accordingly, such pleadings are liberally construed. *Hughes v. Lott*, 148 F.3d 1262, 1263 (11th Cir. 1998).  Nonetheless, *pro se* litigants are required to conform to procedural rules, including the requirements of the Federal Rules of Civil Procedure. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007); *see* Fed. R. Civ. P. 8(a), 10.

## III. DISCUSSION

In this case, the crux of the parties' dispute is whether, as a factual matter, Plaintiff ever signed or agreed to the Arbitration Agreement that VXI has presented. "[A]rbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 648 (1986). State contract law governs whether the parties entered into a valid arbitration agreement. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367–68 (11th Cir. 2005) (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)); *Burch*, 861 F.3d at 1346 ("The threshold question of whether an arbitration agreement exists at all is simply a matter of contract." (citations and quotation marks omitted)).

"Under Georgia law, a contract is enforceable if there is (a) a definite offer and (b) complete acceptance (c) for consideration." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). "An offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing. The offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act." *Moreno v. Strickland*, 255 Ga. App. 850, 853 (2002) (citations and quotation marks omitted).

As an initial matter, the undersigned notes that the Court must find that Plaintiff signed the Arbitration Agreement in order to grant VXI's motion. Although the FAA does not impose a signature requirement to enforce an arbitration agreement, this Arbitration Agreement clearly required signatures as acceptance.[3] *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) (holding that the FAA does not contain a signature requirement).

Applying a summary judgment standard, VXI has provided sufficient evidence to satisfy its initial burden to show that the parties entered into a valid agreement to arbitrate, which Plaintiff signed. *See Clark*, 929 F.2d at 608. VXI has submitted the Arbitration Agreement, which bears the basic requirements of offer, acceptance, and consideration, and shows a signature matching Plaintiff's former name.[4] (Doc. 52-2 at 11–13). VXI has also submitted properly sworn affidavits attesting to its standard business practice of having employees sign an agreement to arbitrate during the orientation process at the beginning of their employment. (Thomas Aff. ¶¶ 3, 13–16; Wright Aff. ¶¶ 3–8).

---

[3] In relevant part, the Arbitration Agreement reads, "our respective signatures on this Agreement mean that both the Company and I are giving up our rights to a jury trial and to a trial in a court of law." (Doc. 52-2 at 13).

[4] The parties do not dispute that Plaintiff previously went by the name Laura Leemore.

Broadly construing Plaintiff's arguments, her only challenge to the Arbitration Agreement here is whether she accepted it by signature. In her response, Plaintiff denies signing any arbitration agreement specifically or any employee handbook containing the arbitration agreement. (Doc. 54). She argues that she lacked knowledge of any arbitration agreement until she initiated this case in federal court and that VXI failed to provide enough evidence, such as signature verification or audit procedures, to show that she signed the agreement. (*Id.* at 8). She also alleges that the documents bearing her purported electronic signature that Defendant submitted in support are forged. (*Id.* at 8–9).

To the extent that Plaintiff alleges that the documents presented by VXI are forged, those statements cannot be used to satisfy her burden at summary judgment.[5] A party must place the formation of an arbitration agreement "in issue" by submitting competent evidence, such as documents, affidavits, and declarations. 9 U.S.C. § 4; *see Celotex*, 477 U.S. at 324. Plaintiff has presented no evidence to

---

[5] To the extent that Plaintiff also argues that VXI did not satisfy its burden because the Arbitration Agreement "shows no official signatures, no audit trail, no tracking information, pretyped or stamped company signatures on the agreement and documents, [or] all dates possibly showing the date of assigned ID by HR department," there are no such requirements. (Doc. 54 at 7); *see* O.C.G.A. § 10-12-7 (allowing for the use of electronic signatures under Georgia law); O.C.G.A. § 10-12-9 ("An electronic record or electronic signature shall be attributable to a person if such record or signature was the act of the person. The act of the person may be shown *in any manner*[.]" (emphasis added)).

support this contention, and the undersigned will not consider unsworn and unsupported statements of fact in a party's argument. *See Carr v. Tatangelo*, 388 F.3d 1259, 1273 n.26 (11th Cir. 2003) ("Unsworn statements . . . cannot be considered by a district court in ruling on a summary judgment motion."); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("One who resists summary judgment must meet the movant's affidavits setting forth *specific facts* to show why there is an issue for trial." (alterations and quotations omitted) (emphasis added)).[6]

Of the evidence that she does submit, only Plaintiff's affidavit speaks directly on the issue of whether she signed any agreement to arbitrate. However, her affidavit consists of only four conclusory statements that she (1) never signed any agreement to arbitrate in May 2017,[7] (2) never signed the Arbitration Agreement here, (3) did not discuss or receive any agreement to arbitrate during her employment, and (4)

---

[6] For the same reason, the undersigned also disregards Plaintiff's allegations in her brief that that Wright and Thomas were not present for any training session. In any event, this fact is not in dispute, as Wright and Thomas only assert that they were involved generally in the orientation process, not that they specifically remember Plaintiff's employee orientation or her signing the Arbitration Agreement. To the extent that Thomas's affidavit asserts that Plaintiff signed the arbitration agreement merely because the agreement was in her personnel file, (*see* Thomas Aff. ¶ 4), the undersigned has disregarded that allegation as conclusory and not based on personal knowledge.

[7] Plaintiff uses the date May 24, 2020, but the undersigned assumes that the year is an error.

would never have signed any agreement that would waive her right to sue. (Doc. 54 at 38). Given the fact that VXI satisfied its initial burden to show that Plaintiff accepted the Arbitration Agreement by signing it, Plaintiff was required to submit more than general assertions that she never signed it. ; *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990) (stating that summary judgment rules do not allow a party "to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit); *cf. Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").

In contrast, Anthony Leemore's affidavit is not conclusory, as he explains when he was employed by VXI, his recollection of the orientation process, and that he did not remember Thomas being involved in that process. (Doc. 54 at 48). However, because Anthony Leemore was not hired at the same time as Plaintiff, his affidavit is, at best, only minimally probative of whether *Plaintiff* signed any agreement to arbitrate. However, without more, this affidavit amounts to only a scintilla of evidence supporting Plaintiff's argument, which is insufficient to avoid arbitration. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The other portions of the evidence that Plaintiff submitted, including filings from a case involving VXI in the Northern District of Ohio, do not support her opposition to arbitration. Plaintiff notes that, in a separate case, VXI asserted that

13

signing an arbitration agreement was a mandatory condition of new employment through affidavits from its general counsel, and she appears to argue that VXI's position in that case is inconsistent with its position here. (Doc. 54 at 13).

However, as far as the undersigned can ascertain, no inconsistency exists. Plaintiff highlights a statement from VXI's counsel in the Ohio case, which involved an arbitration agreement for 86 employees that "VXI clearly maintained a consistent policy that all employees desiring employment with [] VXI sign an arbitration agreement." (Doc. 54 at 30). That position comports with Wright's and Thomas's assertions about VXI's practices here, and the arbitration agreements from that case are identical to Arbitration Agreement in the pending matter.[8] (*See id.* at 34–36). In any event, the law is well settled that an employer may require an employee to consent to an arbitration agreement as a condition of employment. *See, e.g.*, *Blalock v. Dillard's Dep't Stores, Inc.*, 2005 WL 8159917, at * 3 (M.D. Fla. 2005) (listing cases where employees assented to mandatory arbitration as a condition of employment because the employer made employees aware of an arbitration agreement).

---

[8] Moreover, there is nothing legally inconsistent with VXI's statement that signing an arbitration agreement was a mandatory new-employee policy and the Arbitration Agreement's language that it was a "mutual agreement." The Arbitration Agreement's language reflects the law of contracts, which provides that mutual promises between two parties to a contract may serve as valid consideration. *See Brack v. Brownlee*, 246 Ga. 818 (1980).

IV. **CONCLUSION**

Because VXI has satisfied its burden to show that the parties entered into the Arbitration Agreement and Plaintiff has not produced sufficient evidence to place the making of that agreement in issue, the undersigned **RECOMMENDS** that the Court **GRANT** VXI's Motion (Doc 52), compel arbitration, and stay these proceedings pursuant to the FAA.  *See* 9 U.S.C. §§ 3, 4.  If the District Court adopts this Report and Recommendation, this case will be stayed and administratively closed until the parties have completed arbitration.  Accordingly, the undersigned also recommends that the District Court direct VXI to file a status report in **ninety (90) days**, informing the Court (1) whether arbitration has been completed and (2) the result of that proceeding.  If arbitration concludes before that time, VXI must notify the Court in writing of the termination of arbitration proceedings within **fourteen (14) days**.

IT IS SO **RECOMMENDED** on this 1st day of March 2021.

REGINA D. CANNON
United States Magistrate Judge