IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Laura Walker,

                Plaintiff,

                              Case No. 1:19-cv-4846-MLB

v.

VXI Global Solutions LLC,

                Defendant.
_____/

## OPINION & ORDER

Pro se Plaintiff Laura Walker sued her former employer, Defendant VXI Global Solutions LLC, under the Americans with Disabilities Act of 1990. (Dkt. 2.) Defendant seeks to compel arbitration of Plaintiff's claims and stay the proceedings pursuant to the Federal Arbitration Act ("FAA"). (Dkt. 52.) The Magistrate Judge issued a Non-Final Report and Recommendation ("R&R"), recommending the Court grant Defendant's motion, compel arbitration, and stay the proceedings. (Dkt. 62.) Plaintiff objects to the Magistrate Judge's recommendation. (Dkt. 65.) After conducting a de novo review of the record, the Court overrules Plaintiff's objections and adopts the R&R.

## I. Background

### A. Procedural History

On October 28, 2019, Plaintiff initiated this lawsuit by filing a pro se complaint for employment discrimination against Defendant. (Dkt. 2.) On January 27, 2020, Defendant filed an answer, asserting, among other things, its right to arbitration. (Dkt. 9.) Soon after, Defendant moved to (1) compel arbitration and stay the proceedings (Dkt. 13) and (2) stay discovery and pretrial deadlines pending resolution of its motion to compel arbitration (Dkt. 14). The Magistrate Judge granted Defendant's motion to stay discovery and pretrial deadlines. (Dkt. 19.) Several months later, the Magistrate Judge denied Defendant's motion to compel arbitration without prejudice and granted Plaintiff the opportunity to conduct limited discovery on the arbitration issue, after which Defendant could file a new motion to compel arbitration. (Dkt. 47.)

On September 21, 2020, Defendant filed a renewed motion to compel arbitration and stay the proceedings. (Dkt. 52.) On October 13, 2020, Plaintiff filed a self-styled "Renewed Motion to Dismiss the Arbitration Agreement," which the Court construes as a response brief in opposition to Defendant's motion. (Dkt. 54.) The Magistrate Judge

recommends the Court grant Defendant's motion, compel arbitration, and stay the proceedings. (Dkt. 62.) Plaintiff objects to the R&R. (Dkt. 65.)

B. **Evidence**

Plaintiff began working at Defendant on May 22, 2017. (Dkt. 2 at 7.) As support for arbitration, Defendant claims the parties entered into a binding arbitration agreement on May 24, 2017. (Dkt. 52-1 at 5–7.) Defendant provided the Court the agreement, entitled Mutual Agreement to Arbitrate Individual Claims (the "Arbitration Agreement"). (Dkt. 52-2 at 11–13.) The Arbitration Agreement is a three-page document that appears in Defendant's Employee Handbook as Appendix C. (*Id.* at 11.) Paragraph 1 of the Arbitration Agreement provides:

> The Company and I agree to resolve, by arbitration, all individual claims or controversies . . . involving the Company and any of its past or present partners, officers, employees or agents, whether or not those claims or controversies arise out of my employment with the Company or the termination of my employment . . . . [T]he Claims covered by this Agreement include, but are not limited to, . . . claims for discrimination or harassment, including but not limited to discrimination or harassment based on race, sex, religion, national origin, age, marital status, physical or mental disability, medical condition or sexual orientation . . . .

3

(*Id.*) The Arbitration Agreement also states: "The promises by the Company and by me to arbitrate claims, rather than to litigate them, provide consideration for each other." (*Id.* at 12.) On the next page, it provides:

> The Company and I acknowledge that we have both carefully read this Agreement, that all understandings between me and the Company relating to the subject matter of arbitration are contained in it, that our respective signatures on this Agreement mean that both the Company and I are giving up our rights to a jury trial and to a trial in a court of law, and that we have both entered into this Agreement voluntarily and not in reliance on any premises or representations other than those contained in this Agreement. The Company and I further acknowledge that we have had an opportunity to discuss this Agreement with attorneys of our choice prior to signing it and we have used that opportunity to the extent we wish to do so.

Below that paragraph are lines for the employee's signature and date, which show Laura Leemore's signature dated May 24, 2017. (*Id.* at 13.)

Other than the Arbitration Agreement, Defendant provided declarations of Stanley Thomas and Kerrance Wright. (Dkts. 52-2 at 1–7; 52-3.) Mr. Thomas is a senior human resources manager at Defendant. (Dkt. 52-2 at 3.) In his declaration, Mr. Thomas explained that, at the time Plaintiff was hired, her last name was Leemore, not Walker. (*Id.* at 3, 5.) According to Mr. Thomas, Defendant's personnel file for Plaintiff,

which is kept in the ordinary course of business, contains her new-hire paperwork, including the Arbitration Agreement. (*Id.* at 3–4.) The Arbitration Agreement was provided to Plaintiff electronically. (*Id.* at 5.) To sign it, Plaintiff was required to log in to Defendant's computer system using her employee identification number and password. (*Id.*) After that, she had to scroll through the electronic document, click a button called "Signature and Acknowledgement," and digitally sign her name using a computer mouse. (*Id.* at 6.) Mr. Thomas also represents that Defendant's personnel file for Plaintiff confirms that Plaintiff electronically signed the final page of the Arbitration Agreement. (*Id.*)

Defendant's other declaration was from Mr. Wright, who was a human resources coordinator at Defendant at the time Plaintiff was hired. (Dkt. 52-3 at 4.)[1] According to Mr. Wright, he was the "primary person" who conducted new-hire orientations when Defendant hired Plaintiff. (*Id.*) He explained that, during orientation, new employees used a unique employee identification number and password to access

---

[1] The page numbers on the copy of Mr. Wright's declaration do not match the page numbers applied by the CM/ECF system. The Court cites to the CM/ECF page numbers for Mr. Wright's declaration filed as Document 52-3.

5

the employee dashboard in order to sign new-hire documents, including an arbitration agreement. (*Id.* at 4–5.) Mr. Wright confirmed each employee signed all the new-hire documents by checking the computer screen of each employee during the orientation, reviewing the documents after orientation to confirm each employee had signed all necessary documents, and making sure the documents became part of each employee's personnel file. (*Id.* at 5.) Both Mr. Thomas and Mr. Wright stated that Plaintiff continued to have access to the signed Arbitration Agreement on Defendant's employee dashboard during her employment. (Dkts. 52-2 at 6; 52-3 at 5.)

In opposition to arbitration, Plaintiff contends no valid arbitration agreement was established between the parties, and she never signed the Arbitration Agreement during her employment at Defendant. (Dkt. 54 at 4.)[2] Plaintiff provided her own declaration, in which she denies signing the Arbitration Agreement or any other arbitration agreement. (*Id.* at 38.) She also provided two affidavits from her son, Anthony Leemore, who was employed at Defendant from July 2017 to March 2019. (*Id.* at

---

[2] The page numbers on Plaintiff's response do not match the page numbers applied by the CM/ECF system. The Court cites to the CM/ECF page numbers for Plaintiff's response filed as Document 54.

48–49.) Mr. Leemore says he participated in Defendant's new-hire orientation but was never presented with an arbitration agreement. (*Id.*) He also says "Trainer Chris" was the "sole authority" during orientation and he "did not witness Stanley Thomas's presence" at orientation. (*Id.*)

Lastly, Plaintiff provided filings from a case involving Defendant in the United States District Court for the Northern District of Ohio (the "Ohio filings") in an attempt to show inconsistencies in Defendant's policies. (*Id.* at 13, 17–36.) In the Ohio filings, Plaintiff highlighted a portion of a statement from Defendant's counsel in the Ohio case. (*Id.* at 30.) The statement reads: "Defendant VXI clearly maintained a consistent policy that all employees desiring employment with Defendant VXI sign an arbitration agreement." (*Id.*)

## II. Standard of Review

The district court must "conduct[] a plain error review of the portions of the R&R to which neither party offers specific objections and a de novo review of the Magistrate Judge's findings to which [a party] specifically objects." *United States v. McIntosh*, No. 1:18-cr-00431, 2019 WL 7184540, at *3 (N.D. Ga. Dec. 26, 2019); *accord* 28 U.S.C. § 636(b)(1) ("[T]he court shall make a de novo determination of those portions of the

[R&R] to which objection is made."); *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam) (explaining that plain error review is appropriate in absence of objection). "Parties filing objections to a magistrate's [R&R] must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). After conducting the required review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**III. Discussion**

The FAA provides that a written agreement to settle controversies by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citation omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

8

When, as in this case, a party moves to compel arbitration under the FAA, "the court must first determine whether 'the making of the agreement for arbitration or the failure to comply therewith is in issue.'" *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (omission adopted) (quoting 9 U.S.C. § 4). In making this determination, the court applies a "summary judgment-like standard."[3] *Id.* If, under this

---

[3] A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party meets this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. In determining whether the moving party has met this burden, the court must view the evidence in the light most favorable to the nonmoving party. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, there is no genuine dispute for trial when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477

standard, the court "concludes that there is no genuine dispute as to any material fact concerning the formulation of such an agreement, it may conclude as a matter of law that the parties did or did not enter into an arbitration agreement." *Id.* (internal quotation marks omitted) (alteration adopted) (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)). "If, on the other hand, the making of the agreement is in issue, 'the court shall proceed summarily to the trial thereof.'" *Id.* (quoting 9 U.S.C. § 4).

State contract law governs whether the parties entered into an arbitration agreement. *Id.* "Under Georgia law, a contract is enforceable if there is (a) a definite offer and (b) complete acceptance (c) for consideration." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). "An offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing. The offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act." *Moreno v. Strickland*, 567 S.E.2d 90, 92–93

---

U.S. 242, 247–48 (1986). The court, however, resolves all reasonable doubts about the facts in favor of the nonmoving party. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

(Ga. Ct. App. 2002) (citing *Herring v. Dunning*, 446 S.E.2d 199, 203 (Ga. Ct. App. 1994)). "To satisfy the consideration requirement under Georgia law, an accepting party to a contract can either tender bargained-for performance or make a mutual promise." *Lambert*, 544 F.3d at 1195 (citing O.C.G.A. § 13-3-42).

The Magistrate Judge found Defendant met its initial burden of showing there is no genuine dispute that the parties entered into the Arbitration Agreement. (Dkt. 62 at 10.) The Court agrees. Defendant provided the Arbitration Agreement, which bears the requirements of offer, acceptance,[4] and consideration and shows a signature matching Plaintiff's former name.[5] (Dkt. 52-2 at 11–13.) Defendant also submitted declarations attesting to its standard business practice of having new

---

[4] The Court agrees with the Magistrate Judge that, although the FAA does not contain a signature requirement, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005), the Arbitration Agreement clearly required signatures as acceptance (Dkt. 52-2 at 13 ("[O]ur respective signatures on this Agreement mean that both the Company and I are giving up our rights to a jury trial and to a trial in a court of law . . . .")).

[5] Plaintiff does not dispute that she previously went by the name Laura Leemore. (*See generally* Dkts. 54; 65.)

11

employees sign an arbitration agreement during the new-hire orientation.⁶ (Dkts. 52-2 at 1–7; 52-3.)

The Magistrate Judge next found Plaintiff did not meet her burden of producing sufficient evidence to show there is a genuine dispute of material fact as to whether the parties entered into the Arbitration Agreement. (Dkt. 62 at 11–14.) Broadly construing Plaintiff's arguments in objection to the R&R, the only challenge she makes relates to

---

⁶ Plaintiff objects to the declarations of Mr. Thomas and Mr. Wright "because they present[] no valid form of proof[ and] no audit trail of an arbitration agreement." (Dkt. 65 at 1.) Plaintiff provides no argument or evidence on why the declarations are not a "valid form of proof" in her objections, but the Court assumes she alleges that for the same reasons set forth in her response to Defendant's motion. In that response, Plaintiff argues neither Mr. Thomas nor Mr. Wright were present during her orientation. (Dkt. 54 at 11.) The Court will not consider unsworn and unsupported statements in a party's argument. *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) ("Unsworn statements . . . cannot be considered by a district court in ruling on a summary judgment motion."). In any event, that fact is not in dispute. Neither Mr. Thomas nor Mr. Wright claim to have been physically present at Plaintiff's orientation. (Dkts. 52-2 at 1–7; 52-3.) They merely assert that they were involved in the new-hire orientation process *generally*. (Dkts. 52-2 at 1–7; 52-3.) For example, Mr. Wright said he was the "primary person" who conducted new-hire orientations, (Dkt. 52-3 at 4), but he did not say he was the *only* person. As to Plaintiff's second contention, there is no requirement that Defendant provide an "audit trail." *See* O.C.G.A. § 10-12-9 ("An electronic record or electronic signature shall be attributable to a person if such record or signature was the act of the person. The act of the person may be shown *in any manner* . . . ." (emphasis added)).

acceptance: she reiterates that she never signed an arbitration agreement. (*See* Dkt. 65 at 3 ("Plaintiff is standing on the original statement that she has never signed an arbitration agreement with the Defendant VXI.").) The Court will conduct a de novo review. *See* 28 U.S.C. § 636(b)(1) ("[T]he court shall make a de novo determination of those portions of the [R&R] to which objection is made.").

In support of her contention that she never signed an arbitration agreement, Plaintiff provided her declaration, two affidavits from Mr. Leemore, and the Ohio filings. (Dkt. 54.) Out of that evidence, only Plaintiff's declaration goes directly to the issue of whether she signed an arbitration agreement. That declaration, however, only consists of four conclusory statements: (1) she denies signing an arbitration agreement with Defendant in May 2017;[7] (2) she denies signing the Arbitration Agreement; (3) she contends she did not discuss nor receive any arbitration agreement during her employment; and (4) she claims she never signed any type of agreement "that takes away [her] rights to sue." (*Id.* at 38.) Those conclusory assertions are not sufficient. *See Lujan v.*

---

[7] Plaintiff uses the date May 24, 2020. (Dkt. 54 at 38.) The Court assumes the year is a typographical error.

13

*Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (explaining that a party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.").

Plaintiff also does not meet her burden with Mr. Leemore's affidavits or the Ohio filings. In his affidavits, Mr. Leemore explained he was employed at Defendant from July 2017 to March 2019, his recollection regarding the new-hire orientation process, and "Trainer Chris" was the "sole authority" during orientation. (Dkt. 54 at 48–49.) Mr. Leemore's affidavits are limited to his own experience at Defendant, and he does not purport to have knowledge as to whether Plaintiff did or did not sign the Arbitration Agreement. Consequently, Mr. Leemore's affidavits are not probative of whether Plaintiff signed the Arbitration Agreement. The Court agrees with the Magistrate Judge that his affidavits amount to only a scintilla of evidence supporting Plaintiff's argument, which is insufficient. (Dkt. 62 at 13); *Gunning v. Cooley*, 281 U.S. 90, 94 (1930) ("A mere scintilla of evidence is not enough to require

the submission of an issue to the jury."); *Valencia v. 1300 Ocean Drive, LLC*, No. 17-20669-CIV-MORENO, 2017 WL 7733158, at *2 (S.D. Fla. Dec. 4, 2017) ("A mere scintilla of evidence . . . will not suffice to defeat a finding that an arbitration agreement was formed.").

In the Ohio filings, Defendant asserted, through affidavits from its general counsel, that signing an arbitration agreement was a mandatory condition of new employment. (Dkt. 54 at 30.) Plaintiff argues Defendant's position in the Ohio filings is inconsistent with its position in this case. (*Id.* at 13.) According to Plaintiff, Defendant's positions are inconsistent because, in the Ohio case, Defendant said it has a policy of requiring consent to an arbitration agreement as a condition of employment but in this case the Arbitration Agreement "is mutual and not mandatory." (*Id.*) The Court sees no inconsistency in Defendant's positions. Plaintiff's reliance on the word "mutual" in the Arbitration Agreement is misguided for two reasons. First, the arbitration agreement at issue in the Ohio case is identical to the Arbitration Agreement in this case—they both contain the word "mutual." (*Id.* at 34–36.) Second, the use of the word "mutual" merely reflects the law of contracts, which requires mutual assent. *See Regan v. Stored Value*

15

*Cards, Inc.*, 85 F. Supp. 3d 1357, 1362 (N.D. Ga. 2015) ("Georgia law requires the assent of both parties in order to form a contract." (citing O.C.G.A. §§ 13-3-1, 13-3-2)). Moreover, Defendant's position in the Ohio filings comports with what Mr. Thomas and Mr. Wright explained in this case about Defendant's new-hire practices. In any event, an employer may require an employee to consent to an arbitration agreement as a condition of employment. *Blalock v. Dillard's Dep't Stores, Inc.*, No. 6:04-cv-1464-Orl-19JGG, 2005 WL 8159917, at *3 (M.D. Fla. Jan. 20, 2005) (collecting cases); *cf. Perhach v. Option One Mortg. Corp.*, 382 F. App'x 897, 899 (11th Cir. 2010) (per curiam) ("[A]rbitration agreements are not coercive simply because an employer requires them as a condition of employment . . . .").

For these reasons, the Court finds Defendant met its initial burden, but Plaintiff has not met her burden of showing there is a genuine dispute of material fact as to whether the parties entered into the Arbitration Agreement.

## IV. Conclusion

The Court **OVERRULES** Plaintiff's Objections (Dkt. 65) and **ADOPTS** the Magistrate Judge's Non-Final Report and Recommendation (Dkt. 62). Accordingly, the Court **GRANTS** Defendant's Motion to Compel Arbitration and Stay Proceedings (Dkt. 52) and **COMPELS** arbitration.

The Court construes Plaintiff's "Renewed Motion to Dismiss the Arbitration Agreement" (Dkt. 54) as her response in opposition to Defendant's arbitration motion. The Court thus **DIRECTS** the Clerk to terminate Plaintiff's motion (Dkt. 54).

This action is **STAYED** and **ADMINISTRATIVELY CLOSED** pending the outcome of arbitration.[8] The Court **ORDERS** the parties to provide the Court with status updates on their arbitration (1) every three months after the entry date of this Order and (2) within fourteen days after the arbitration proceedings have concluded. Failure to comply with these instructions could result in dismissal of this case (without further warning).

---

[8] The FAA directs courts to stay their proceedings in any case raising a dispute on an issue referable to arbitration. *See* 9 U.S.C. § 3.

**SO ORDERED** this 21st day of June, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE